IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

COURTNEY BOYD,                    )
AIS #208921,                      )
                                  )
        Plaintiff,                )
                                  )
    v.                            )        CASE NO. 2:08-CV-650-TMH
                                  )               [WO]
                                  )
NURSE MASSEY, et al.,             )
                                  )
        Defendants.               )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION

In this 42 U.S.C. § 1983 action, Courtney Boyd ["Boyd"], a state inmate and frequent litigant in this court, challenges the constitutionality of actions taken against him on July 31, 2008 during his incarceration at the Bullock County Correctional Facility ["Bullock"].  Boyd names Jacqueline Massey, a licensed practical nurse, Dr. Tahir Siddiq, and Sgt. Anthony Jackson, all assigned to Bullock at the time of the actions made the basis of the complaint, as defendants in this cause of action.  The allegations central to Boyd's complaint are that on July 31, 2008 nurse Massey and Dr. Siddiq denied him adequate medical treatment for his back.  Boyd also complains that on this same date Lt. Jackson used excessive force when removing him from a stretcher which had been placed on the floor in the health care unit.  Finally, Boyd alleges the actions of the defendants deprived him of equal protection.  Boyd seeks declaratory relief and monetary damages for the

alleged violations of his constitutional rights.

The defendants filed special reports and supporting evidentiary materials addressing each of Boyd's claims for relief.  Pursuant to the orders entered in this case, the court deems it appropriate to treat these reports as motions for summary judgment.  *Order of January 6, 2009 - Court Doc. No. 49*.  Thus, this case is now pending on the defendants' motions for summary judgment.  Upon consideration of such motions, the evidentiary materials filed in support thereof and Boyd's responses in opposition to the motions, the court concludes that the defendants' motions for summary judgment are due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[1]  The party moving for summary judgment "always bears the initial responsibility

---

[1]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination." *Id*. "'Shall' is also restored to express the direction to grant summary judgment." *Id*. Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions

of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

When the moving parties meet their evidentiary burden, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.")  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

In civil actions filed by inmates, federal courts

---

of the rule remain equally applicable to the current rule.

> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).  The defendants have met their evidentiary burden.  Consequently, to survive the defendants' properly supported motions for summary judgment, Boyd is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims for relief.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted."  *Id*. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment.  *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d

912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting

5

the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil

6

case.  In this case, Boyd fails to demonstrate a requisite genuine issue of material fact in order to preclude summary judgment.  *Matsushita*, *supra*.

## III.  DISCUSSION

### A.  Absolute Immunity

With respect to any claims Boyd lodges against the defendants in their official capacities, they are entitled to absolute immunity from monetary damages.  Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  "A state official may not be sued in his [or her] official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that the defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia*

*Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).  Thus, each of the defendants is entitled to absolute immunity from those claims for monetary relief presented against them in their official capacities.  *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### B.  Relevant Facts

At this stage of the proceedings, the court must "take the facts alleged in the complaint as true and construe them in the light most favorable to [Boyd].  *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008)."  *Danley v. Allen*, 540 F.3d 1298, 1304 (11th Cir. 2008).  In this light, the facts are that on July 31, 2008 Boyd "sign[ed] up for sick call to [request a] back brace, because of my lower back started going out [due to an injury suffered in June of 2003].  I was seen by Dr. Siddiq [and] even show[ed] him my free world doctor report [based upon an examination performed in August of 2006 which indicated a  disability due to the 2003 back injury but specifically rejected surgery or therapy as treatment options and indicated treatment of Boyd's muscle spasms through medications]...."  *Plaintiff's Complaint - Court Doc. No. 1* at 4.  Based on the results of a July 2, 008 x-ray and his current evaluation of Boyd's condition, Dr. Siddiq determined issuance of a back brace to Boyd was not necessary or warranted.  Dr. Siddiq prescribed Boyd medications to relieve the pain and stiffness in his back and ordered Boyd to exit the health care unit.  *Id*.

Boyd later returned to the health care unit continuing his complaints of back pain

and stiffness.  Ms. Wells, a registered nurse, evaluated Boyd, agreed with Dr. Siddiq's earlier assessment of his condition and released Boyd from sick call.  Later that evening, Boyd returned to the health care unit for a third time seeking treatment for his back, this time on a flat stretcher carried by inmates.  The medical defendants had not been advised of the need for use of a stretcher regarding any injury to Boyd nor had they authorized its use.  Upon arrival at the health unit, the inmates placed the stretcher on the floor.  Nurse Massey ordered Boyd "to get up out that stretcher, and go to the back of the [health care unit], because Dr. Siddiq [is] not here.  I informed Nurse Massey that I could not move" and Lt. Jackson removed me from "the stretcher onto the floor."  *Plaintiff's Complaint - Court Doc. No.* 1 at 4.  Two inmates transported Boyd via wheelchair to the rear of the health care unit where he waited for approximately 25 minutes until nurse Massey provided him with the medications prescribed by Dr. Siddiq.  *Id.* at 5.

Dr. Siddiq returned to the area and again evaluated Boyd regarding complaints of back pain.  *Id*.  Dr. Siddiq advised Boyd that, in his medical opinion and based on his current assessment of Boyd's condition, Boyd did not "need a back brace" and the appropriate course of treatment constituted medications to aid with pain and muscle stiffness.  *Id*.  The medical defendants provided Boyd his medications and ordered him to leave the health care unit at which time Boyd  began walking to his cell.  Boyd advised nurse Massey "it was hurting to walk" and she responded with a derogatory remark intimating he engaged in homosexual activities.  *Id*.

9

### C.  Equal Protection

Boyd makes the conclusory allegation the defendants violated his "14th Amendment right to equal protection of the law." *Plaintiff's Complaint - Court Doc. No. 1* at 7.

To establish a claim cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis. *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)." *Sweet v. Secretary, Department of Corrections*, 467 F.3d 1311, 1318-1319 (11th Cir. 2006). "[O]fficial action will not be held unconstitutional solely because it results in a ... disproportionate impact.... Proof of ... discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-265 (1977). "'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences.  It implies that the decision maker ... selected ... a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991).  Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of

purposeful or invidious discrimination, is insufficient to show discriminatory intent.
*McKleskey v. Kemp,* 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987).

Initially, the court notes Boyd fails to identify any similarly situated inmate nor does he allege how the defendants acted in a more favorable manner towards any other inmate. Thus, "[Boyd's] equal protection claim necessarily fails first because he has not shown that he was treated differently from other, similarly situated prisoners." *Sweet*, 467 F.3d at 1319.  Additionally, Boyd completely fails to meet his pleading burden as he does not allege the defendants subjected him to adverse treatment based on some constitutionally impermissible reason, nor is there any evidence before the court to indicate any such discrimination; rather, he simply makes the conclusory assertion that the defendants violated his right to equal protection.  Beyond this self-serving and conclusory allegation, Boyd  produces nothing which suggests the defendants took any action against him based on a constitutionally protected interest.  In light of the foregoing, the court concludes Boyd's mere conclusory assertion does not rise to the level of an equal protection violation and therefore provides no basis for relief in this 42 U.S.C. § 1983 action.  Consequently, the defendants are entitled to summary judgment on this claim.

### D.  Medical Treatment

Boyd complains nurse Massey and Dr. Siddiq acted with deliberate indifference to recurring pain in his lower back on July 31, 2008. *Plaintiff's Complaint - Court Doc. No.*

*1* at 4-5. The defendants adamantly deny this allegation.[2]

Correctional medical personal may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's health when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not 'respond[] reasonably to the risk.' *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1982-83, 128 L.Ed.2d 811 (1994). A plaintiff must also show that the constitutional violation caused his injuries." *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc).

In *Farmer*, the Court identified both objective and subjective elements necessary to establish an Eighth Amendment violation. With respect to the requisite objective elements, an inmate must first show "an objectively substantial risk of serious harm ... exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh*, 268 F.3d 1028-1029. As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also

---

[2]The medical defendants also assert Boyd failed to properly exhaust the administrative remedy available to him during his confinement at Bullock as he did not file a grievance related to his medical treatment claim. Boyd, however, maintains he repeatedly attempted to pursue the grievance procedure but his grievances were routinely placed in the garbage and/or not accepted by medical personnel. In light of the foregoing, the court deems it appropriate to address the merits of the claims lodged against the medical defendants.

draw the inference....   The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'  ...   ***[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment***." *Farmer*, 511 U.S. at 837-838 (emphasis added); *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety....   It is ***obduracy and wantonness, not inadvertence or error in good faith***, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (emphasis added).

To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that the named defendants acted with deliberate indifference to a serious medical need.  *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000);  *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986).  Specifically, health care personnel may not subject an inmate

to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Mandel v. Doe*, 888 F.2d 783, 787 (11th Cir.1989). When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner). Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendants] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991).... Even assuming the existence of a

14

> serious risk of harm and legal causation, the prison official must be aware
> of specific facts from which an inference could be drawn that a substantial
> risk of serious harm exists - and the prison official must also "draw that
> inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). "The known risk of injury must

be a strong likelihood, rather than a mere possibility before [an official's] failure to act can

constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990)

(citations and internal quotations omitted). Thus, in order to survive summary judgment

on his deliberate indifference claim, Boyd is "required to produce sufficient evidence of

(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that

risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995);

*Farmer*, 511 U.S. at 837-838 (To evade entry of summary judgment on a properly

supported motion, plaintiff must produce sufficient evidence demonstrating (1) an

objectively substantial risk of serious harm; (2) subjective awareness of this risk on the part

of the defendants; (3) the defendants responded to such risk in an objectively unreasonable

manner; and (4) the actions/omissions of the defendants caused his injuries).

Boyd has complained of back pain since a physical altercation with correctional

officers in June of 2003 at the Bibb Correctional Facility. As is relevant to the present

complaint, Boyd maintains the medical defendants denied him adequate treatment for his

back pain on July 31, 2008. *Plaintiff's Complaint - Court Doc. No. 1* at 4-5. The medical

defendants submitted various evidentiary materials which refute Boyd's suppositious

allegations. Specifically, Massey and Siddiq deny knowledge of any back problem suffered by Boyd on July 31, 2008 which required treatment other than the treatment provided to him by medical personnel at Bullock on three different occasions on the date made the basis of this complaint. *Medical Defendants' Exhibit 2 (Affidavit of Dr. Tahir Siddiq) - Court Doc. No. 17-2*; *Medical Defendants' Exhibit 3 (Affidavit of Jacqueline Massey) - Court Doc. No. 17-3.*

Dr. Siddiq addresses Boyd's allegations as follows:

I am fully aware of the medical treatment provided to inmate Courtney Boyd from the time of his transfer to Bullock County Correctional Facility in approximately May, 2008, until the time he was transferred to Draper Correctional Facility in August, 2008.

When Mr. Boyd initially arrived at the Bullock County Correctional Facility ..., he came to the health care unit complaining of multiple physical complaints, including alleged chronic back pain. Due to Mr. Boyd's complaints, x-rays were ordered and taken of his back [on July 2, 2008 by American Mobile Imaging in Montgomery, Alabama. The x-ray report indicates "[a]ll vertebral bodies demonstrate normal heights, and all intervertebral disc spaces are normal. There is no spondylolysis or spondylolisthesis, and there is no evidence for prior surgery. Surrounding soft tissues are unremarkable. The sacrolliac joints are intact. IMPRESSION: NORMAL LUMBAR SPINE." *Medical Defendants' Exhibit A to the Affidavit of Dr. Tahir Siddiq - Court Doc. No. 17-2* at 5.]

After reviewing the x-rays and performing a physical examination of Mr. Boyd, I determined that he was not in need of any chronic care and certainly showed no indications of being disabled in any form or fashion.

On July 31, 2008, Mr. Boyd was seen by me at the health care unit at Bullock County Correctional Facility. At this time, he requested to be fitted and prescribed a back brace. However, I told Mr. Boyd that the x-rays showed no indications of any abnormalities and, therefore he was not a candidate for a back brace. I did prescribe Advil and a muscle relaxer for Mr. Boyd ... due to his complaints of back pain.

16

*Medical Defendants' Exhibit 2 (Affidavit of Dr. Tahir Siddiq) - Court Doc. No. 17-2* at 2-3.

In addressing the claims raised by Boyd, nurse Massey, in relevant part, maintains that:

> When Mr. Boyd arrived at the Bullock County Correctional Facility in approximately May, 2008 ... he had multiple physical complaints, including chronic back pain. X-rays were ordered [of Boyd's lumbar spine] and read by [the attending free-world radiologist and] Dr. Tahir Siddiq which showed no abnormalities.
>
> On July 31, 2008, Mr. Boyd signed up for sick call and requested to be given a back brace for his alleged chronic back pain. Due to the fact that the x-rays showed no abnormalities, Dr. Siddiq informed Mr. Boyd that he was not going to prescribe Mr. Boyd a back brace. Dr. Siddiq did, however, prescribe[] Advil and a muscle relaxer due to Mr. Boyd's complaints of back pain. Mr. Boyd was then released from sick call by Dr. Siddiq.
>
> After being released by Dr. Siddiq, Mr. Boyd returned to sick call and was seen by Ms. Wells, a Registered Nurse, again complaining of back pain. Ms. Wells informed Mr. Boyd that he had recently been [examined and] released by Dr. Siddiq and therefore [she] had [no further treatment] to offer him and again released Mr. Boyd from sick call.
>
> Shortly thereafter, Mr. Boyd again, for the third time that day, returned to sick call, this time being carried by fellow inmates on a stretcher. The stretchers are available in the health care unit and no one witnessed the inmates placing Mr. Boyd on the stretcher. The inmates placed Mr. Boyd on the floor in the health care unit. [Boyd remained on the stretcher on the floor. I ordered Mr. Boyd to get off the stretcher.] Sargent Jackson ... then told Mr. Boyd to get up off the stretcher. When Mr. Boyd refused to get up off the stretcher, Sargent Jackson attempted to make Mr. Boyd get up off the floor. Mr. Boyd thereafter crawled over to the wall and sat propped up against the wall....
>
> Sometime thereafter, Mr. Boyd ... left the health care unit. No conversations were had between Mr. Boyd and any other employees of CMS and/or the Alabama Department of Corrections at the time Mr. Boyd left the health care unit.

*Medical Defendants' Exhibit 3 (Affidavit of Jacquelilne Massey) - Court Doc. No. 17-3* at

3-5.

The record before the court demonstrates that during the period of time made the basis of this complaint medical personnel, including the individuals named as defendants, examined Boyd, thoroughly evaluated his complaints, monitored his condition, prescribed various medications and provided treatment for his back condition in accordance with their professional judgment. Boyd fails to present sufficient evidence to create a genuine dispute of fact with respect to his claim that defendants Massey and Siddiq acted with deliberate indifference to his medical needs. Specifically, the record does not indicate that the defendants had knowledge of specific facts from which an inference could be drawn that a substantial risk of harm existed to Boyd, that the defendants actually drew this inference and thereafter ignored the risk. Boyd has therefore failed to establish each of the requisite elements of his deliberate indifference claim. *Carter*, 352 F.3d at 1350. Defendants Massey and Siddiq are therefore entitled to summary judgment on the deliberate indifference claim.

### E. The Derogatory Comment

Boyd complains defendant Massey made a derogatory comment regarding his sexuality when he departed the health care unit. Massey denies this allegation. This claim, however, provides no basis for federal relief.

An essential element of a 42 U.S.C. § 1983 action is that the conduct complained of deprived the plaintiff of rights, privileges or immunities secured by the Constitution or

18

laws of the United States.  *American Manufacturers Mutual Ins. Co. v. Sullivan*, 526 U.S. 40 (1999); *Parratt v. Taylor*, 451 U.S. 527 (1981).  The statement about which the plaintiff complains does not violate any right protected by the Constitution.  *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) (threatening or abusive language directed at inmate by correctional official does not amount to constitutional violations); *King v. Olmstead County*, 117 F.3d 1065, 1067 (8th Cir. 1997) (neither verbal threats nor harassment by government official violates an inmate's constitutional right to due process); *Pittsley v. Warish*, 927 F.2d 3, 7 (1st Cir. 1991) (verbal harassment or idle threats generally not sufficient to constitute violation of liberty interest); *Edwards v. Gilbert*, 867 F.2d 1271, 1274 n.1 (11th Cir. 1989) (verbal taunts directed at plaintiff do not violate his constitutional rights); *Sepulveda v. Burnside*, 170 Fed. Appx. 119, 124 (11th Cir. 2006) (reference to plaintiff "as a 'snitch' in the presence of other inmates" does not rise to the level of a constitutional violation).  It is therefore clear that threatening, derogatory, harassing and/or abusive comments made by a medical official with respect to an inmate do not rise to the level of a constitutional violation.  Thus, nurse Massey's alleged reference to Boyd's homosexual activities fails to demonstrate the deprivation of any constitutionally protected right, privilege or immunity and, consequently, this claim entitles Boyd to no relief.

## F.  The Excessive Force Claim

When Boyd arrived at the health care unit on the stretcher, the inmates placed the stretcher supine on the floor.  Massey and Jackson ordered Boyd to get off the stretcher.

19

Boyd, due to alleged back pain, refused these orders.  Defendant Jackson grasped Boyd by the arm and removed him from the stretcher to the floor directly adjacent to the stretcher. Boyd does not allege he suffered any injury as a result of his removal from the stretcher and merely asserts because Jackson was not one of the medical personnel he "had no right to grasp[] inmate Boyd." *Plaintiff's January 21, 2009 Response - Court Doc. No. 52* at 1. Boyd acknowledges Dr. Siddiq examined him within a few minute after his removal from the stretcher and concedes Dr. Siddiq could not find any physical evidence to support his allegation that his back was "going out." *Plaintiff's Complaint - Court Doc. No. 1* at 5. Dr. Siddiq released Boyd from the health care unit with no additional orders for treatment and Boyd ambulated to his cell under his own power. *Id.*

Sgt. Jackson denies he used excessive force to remove Boyd from the stretcher. Specifically, Jackson maintains the force used against Boyd was minimal and only the amount of force necessary under the circumstances to have Boyd comply with the orders of both he and nurse Massey.  The evidentiary materials filed by all the parties support this assertion.

The Eighth Amendment prohibits the infliction of cruel and unusual punishments and this "proscription ... governs prison officials' use of force against convicted inmates." *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1990).

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v.*

*Albers,* 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986)
(quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also
Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).
To determine if an application of force was applied maliciously and
sadistically to cause harm, a variety of factors are considered including: "the
need for the application of force, the relationship between that need and the
amount of force used, the threat reasonably perceived by the responsible
officials, and any efforts made to temper the severity of a forceful response."
*Hudson,* at 7-8, 112 S.Ct. 995; *see also Whitley,* 475 U.S. at 321, 106 S.Ct.
1078; *Harris v. Chapman,* 97 F.3d 499, 505 (11th Cir.1996).   From
consideration of such factors, "inferences may be drawn as to whether the
use of force could plausibly have been thought necessary, or instead evinced
such wantonness with respect to the unjustified infliction of harm as is
tantamount to a knowing willingness that it occur."   *Whitley,* 475 U.S. at
321, 106 S.Ct. 1078 (quoting *Johnson,* 481 F.2d at 1033).

*Skrtich v. Thornton*, 280 F.3d 1295, 1300-1301 (11th Cir. 2002) (footnote omitted); *Johnson

v. Breeden*, 280 F.3d 1308, 1321 (11th Cir. 2002) (The standard applied to an Eighth

Amendment excessive force claim is whether the challenged use of force was applied "in

a good faith effort to maintain or restore discipline" or instead "maliciously and sadistically

for the very purpose of causing harm."); *Campbell*, 169 F.3d 1374 ("To establish an Eighth

Amendment claim for excessive force, ... Plaintiff must meet [a heightened] intent

requirement ... [and] must prove that 'force was applied ... maliciously and sadistically for

the very purpose of causing harm.' *Whitley*, 475 U.S. at 320-21, 106 S.Ct. 1078 (quoting

*Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973).... [F]orce does not violate the

Eighth Amendment merely because it is unreasonable or unnecessary.").   In addition, "a

mere dispute over the reasonableness of a particular use of force or the existence of

arguably superior alternatives" is not enough to support a claim of excessive force in a

prison setting. *Campbell*, 169 F.3d at 1375. The law is likewise well settled that:

> [N]ot ... every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d, at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of mankind.'" *Whitley*, 475 U.S., at 27, 106 S.Ct., at 1088....

*Hudson*, 503 U.S. at 9-10, 112 S.Ct. at 1000. "[A] wide range of deference [is afforded] to prison officials action to preserve discipline and security." *Whitley*, 475 U.S. at 321-322, 106 S.Ct. at 1085. A relevant factor in ascertaining whether a correctional officer used *de minimis* force is the extent of the injury suffered by the inmate. *Skrtich*, 280 F.3d at 1302; *Campbell*, 169 F.3d at 1375. "Nevertheless, a court ultimately should decide an excessive force claim 'based on the nature of the force rather than the extent of the injury.' *Wilkins v. Gaddy*, 559 U.S. at ---, ----, 130 S.Ct. 1175, 1177, [175 L.Ed.2d 995] (2010)." *Vicks v. Knight*, 380 Fed.Appx 847, 851 (11th Cir. 2010).

After thorough review of the facts and viewing such in a light most favorable to Boyd, the court concludes Boyd fails to establish the use of excessive force in violation of his constitutional rights. Specifically, there is no dispute of material fact about whether Jackson "maliciously and sadistically" used force for the very purpose of causing harm to Boyd. Initially, it is undisputed Jackson merely grasped Boyd by his upper right arm in an attempt to remove him from the stretcher which had been placed on the floor. Jackson did

so only after Boyd refused orders to remove himself from the stretcher/floor. Plainly, the force was applied only to restore disorder caused by Boyd's refusal to comply with a legitimate order. Moreover, the record indicates Boyd suffered no injury due to the force utilized by Jackson. It is clear the physical contact about which Boyd complains alleges, at best, a "*de minimis* use[] of physical force" which is excluded from "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishments" as such contact "is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10; *Hall v. Santa Rosa Correctional Institution*, 403 Fed.Appx. 479, 482 (11th Cir. 2010) (officers who forced inmate's hands behind his back to apply handcuffs after inmate refused orders and became combative "did not use unconstitutional excessive force [and] no constitutional violation occurred."); *McCall v. Crosthwait*, 336 Fed.Appx. 871, 873 (11th Cir. 2009) (push of inmate into steel cell door and plexiglass window, which caused bruises to inmate's right elbow and shoulder, constituted *de minimis* use of force not violative of the Constitution). In light of the foregoing, summary judgment is due to be granted in favor of defendant Jackson on Boyd's excessive force claim.[3]

---

[3] In his response to defendant Jackson's written report, Boyd alleges Jackson grasping his arm "constitutes a violation of Excessive Force" because this use of force violated the Administrative Regulation of the Alabama Department of Corrections governing the use of force by correctional officers. *Plaintiff's Traverse to Defendant Jackson's Special Report - Court Doc. No. 52* at 1. The court notes that this assertion entitles Boyd to no relief as the alleged circumvention of departmental rules, regulations or policies does not constitute a violation of an inmate's constitutional rights. *Sandin v. Conner*, 515 U.S. 472 (1995); *Taylor v. Adams*, 221 F.3d 1254, 1259 (11th Cir. 2000) (Correctional officials "failure to follow [administrative policy or] procedures does not, by itself, raise to the level of [a constitutional violation]...."); *Harris v. Birmingham Board of Education*, 817 F.2d 1525 (11th Cir. 1987). In addition, the regulation cited by Boyd allows the use of force by a correctional officer when justified under the circumstances of the event at issue.

## G.  Supplemental Jurisdiction - State Tort Claims

With respect to the pendent state law claims for medical malpractice and negligence presented by Boyd, the court concludes these claims provide no basis for relief in this cause of action.  Review of any pendent state law claim is only appropriate upon exercise of this court's supplemental jurisdiction.  In the posture of this case, however, the court deems the exercise of such jurisdiction over the state tort claims inappropriate.

> Two factors determine whether state law claims lacking an independent federal jurisdictional basis can be heard in federal court with a federal claim over which the court has jurisdiction.  To exercise pendent jurisdiction [or what is now identified as supplemental jurisdiction] over state law claims not otherwise cognizable in federal court, "the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a 'common nucleus of operative fact.'"  *Jackson v. Stinchcomb,* 635 F.2d 462, 470 (5th Cir.1981) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).  *See generally* C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 3567 pp. 443-47 (1975).

*L.A. Draper and Son v. Wheelabrator Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984).  The exercise of supplemental jurisdiction is completely discretionary.  *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).  "If the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims." *L.A. Draper and Son*, 735 F.2d at 428.  In view of the resolution of the federal claims presented by Boyd, the court concludes the pendent state claims of medical malpractice and negligence are due to be dismissed.  *Gibbs*, 383 U.S. at 726 (if the federal claims are dismissed prior to trial, the state claims should be dismissed as well); *see also Ray v. Tennessee Valley Authority*, 677

24

F.2d 818 (11th Cir. 1982). The court therefore declines to exercise supplemental jurisdiction over the pendent state tort claims presented in this cause of action.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motions for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that **on or before July 25, 2011**, the parties may file objections to this Recommendation. Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d

33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981,

*en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed

down prior to the close of business on September 30, 1981.

     Done this 11th day of July, 2011.


                  /s/Charles S. Coody
                CHARLES S. COODY
                UNITED STATES MAGISTRATE JUDGE